

**DICKINSON WRIGHT PLLC**
John L. Krieger
Nevada Bar No. 6023
Email: jkrieger@dickinson-wright.com
Taylor A. Anello
Nevada Bar No. 12881
Email: tanello@dickinson-wright.com
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210
Tel: (702) 550-4400
*Attorneys for Plaintiff The Astound Group*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| THE ASTOUND GROUP, a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FARADAY FUTURE, a California corporation<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT** |

COMES NOW, Plaintiff The Astound Group, Inc. ("Astound"), through undersigned counsel, the law firm of Dickinson Wright, PLLC, and brings this Complaint against Defendant, Faraday Future ("Faraday") and alleges as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff Astound is a Nevada corporation, duly authorized to conduct business in Clark County, Nevada.

2. Upon information and belief, Defendant Faraday is a corporation with its principal place of business in California, conducting business in Clark County, Nevada.

3. This Court has subject matter jurisdiction over the matter pursuant to 28 U.S.C. § 1332 because Astound is a citizen from a state different from Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this court because this action concerns facts, acts, events, and

1

circumstances described herein occurred in Clark County, Nevada.

## GENERAL ALLEGATIONS

5. Faraday is a technology company focused on the development of intelligent electric vehicles.

6. Astound is a global design and fabrication house, building end-to-end solutions for events, exhibits and environments.

7. In October of 2016, Faraday engaged Astound to provide design and fabrication services for multiple upcoming projects and events, including the Stealth Labs 2016 Project ("Stealth Labs"), the 2017 Consumer Electronics Show Launch Event (the "CES 2017 Launch Event"), and the 2017 Consumer Electronics Show Booth (the "2017 CES Booth"; collectively referred to as the "Projects").

8. Astound provided Faraday with a proposed Memorandum of Agreement (the "MOA") in regards to the Projects, as well as proposals projecting costs for the Projects.

9. Prior to the execution of the MOA or the proposals for the Projects, on September 11, 2016, the Event Production Manager for Faraday, Dustin O'Neill ("O'Neill"), notified Astound to start working on the Projects in light of quickly approaching deadlines and continuously reassured Astound that the MOA would be signed.

10. Additionally, there was consistent verbal confirmation and reinforcement of the agreement between Faraday and Astound from all employees and directors at Faraday, including the Managing Director.

11. Individuals at Astound were working almost exclusively on the Projects for Faraday for several months.

12. The Managing Director and design directors at Faraday were undeniably aware of the work that Astound was doing for Faraday and were actively engaging with Astound in on site meetings at Faraday.

13. The working relationship between Faraday and Astound was a cross company, cross departmental and multiple agency effort to get the Projects completed.

14. Despite representations otherwise, Faraday never returned signed copies of the MOA or proposals to Astound.

### *Stealth Labs 2016 Project*

15. There was an initial verbal agreement between Astound and Faraday for work on Stealth Labs. Specifically, O'Neill provided instructions to Astound to move forward with Stealth Labs, as well as the approaching deadlines and instructions to comply with those deadlines.

16. On October 3, 2016, Astound provided Faraday with an initial proposal and request for a 40% down payment due to the expedited and urgent nature of the Stealth Labs (the "Stealth Labs Proposal"). (*See* Stealth Labs Proposal, attached hereto as **Exhibit 1**.)

17. The Stealth Labs Proposal outlined the projected costs for the project, along with terms and conditions of payment including 1.5% interest on all overdue payments.

18. On October 4, 2016, O'Neill responded to Astound noting that the Stealth Labs Proposal "looks great" and that he did "not foresee a problem pushing [the proposal] through and getting payment set up."

19. In reliance upon these statements, Astound continued working on Stealth Labs. However, Astound was never provided an executed proposal or the requested down payment.

20. In relation to Stealth Labs, Astound provided services for Faraday, including, but not limited to, over three months of planning for the event, multiple site visits, in-person meetings and conference calls.

21. The specific services charged for are outlined on Invoice No. 2016846 (the "Stealth Labs Invoice"). (*See* Stealth Labs Invoice, attached hereto as **Exhibit 2**.)

22. Throughout the project, Astound was working in conjunction with multiple individuals at Faraday, which is evidenced by email correspondence and call logs, evidencing that Faraday was well aware of and consented to the work being done by Astound.

23. The Stealth Invoice for $837,455.06 was due on November 3, 2016.

24. Pursuant to the terms and conditions on the Stealth Labs Proposal, interest at 1.5% per month is charged on all overdue payments.

25. Consequently, a total of $200,989.21 in interest has incurred on the Stealth Labs Invoice to date, bringing the total amount owed on the Stealth Labs Invoice to $1,038,444.27.

### *CES 2017 Launch Event*

26. Faraday also contracted with Astound to perform services in preparation for and at the CES 2017 Launch Event.

27. Astound provided Faraday with proposals for the CES 2017 Launch Event (the "CES Launch Proposals"). (*See* CES Launch Proposals, attached hereto as **Exhibit 3**.)

28. The CES Launch Proposals outlined the projected costs for the project, along with terms and conditions of payment including 1.5% interest on all overdue payments.

29. Faraday made some payments to Astound for services provided in relation to the CES 2017 Launch Event. However, there is an outstanding invoice for services and items that were provided onsite at the event.

30. As evidenced by Invoice No. 2017198 (the "CES Launch Invoice"), Faraday was invoiced $322,274.00 for services provided by Astound in relation to the CES 2017 Launch Event. (*See* CES Launch Invoice, attached hereto as **Exhibit 4**.)

31. Specifically, the CES Launch Invoice was for items on Change Order 05 to extend the properties for the Ride and Drive at the event, as well as the overage for the additional generator gas used.

4

32. The items on Change Order 05 were approved by Faraday onsite, due to the emergent nature of the changes.

33. Astound requested a signed copy of Change Order 05, but instead were provided with a copy of an internal Faraday email confirming that the change orders were not only approved onsite, but was also approved after the fact for payment. (*See* January 2017 Email Correspondence, attached hereto as **Exhibit 5**.)

34. Astound paid for the items approved onsite by Faraday out of pocket.

35. Payment was due on the CES Launch Invoice on February 2, 2017.

36. Pursuant to the terms and conditions on the CES Launch Proposals, interest at 1.5% per month is charged on all overdue payments.

37. As such, a total of $72,511.65 in interest has incurred on the CES Launch Invoice to date, bringing the total amount owed on the CES Launch Invoice to $394,785.65.

### *CES 2017 Booth*

38. Astound provided Faraday with a proposal for the CES 2017 Booth (the "CES Booth Proposal"). (*See* CES Booth Proposal, attached hereto as **Exhibit 6**.)

39. The CES Booth Proposal outlined the projected costs for the project, along with terms and conditions of payment including 1.5% interest on all overdue payments.

40. Astound provided services for Faraday in regards to the CES 2017 Booth, including months of planning, costs of audio-visual partners, onsite Las Vegas Convention Center contractors, shop set-ups, site meetings of the items being utilized at CES 2017 and numerous conference calls.

41. Invoice No. 2016923 is for fees and costs incurred by Astound for services in connection with the CES 2017 Booth totaling $56,880.20 (the "Booth Invoice"). (*See* Booth Invoice, attached hereto as **Exhibit 7**.)



42. Payment was due on the Booth Invoice on November 10, 2016.

43. Pursuant to the terms and conditions on the proposal for the CES 2017 Booth, interest at 1.5% per month is charged on all overdue payments.

44. As such, a total of $15,357.65 in interest has incurred on the Booth Invoice to date, bringing the total amount owed on the Booth Invoice to $72,237.85.

45. Astound attempted to collect on the foregoing invoices in direct communication with Faraday and provided documentation supporting the collection efforts on multiple occasions.

46. Once it became apparent that Faraday was misrepresenting its intentions to make payments, Astound was forced to retain counsel.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

47. Astound incorporates Paragraphs 1-46 as though fully set forth herein.

48. An enforceable contract requires an offer and acceptance, meeting of the minds, and consideration.

49. A contract is implied-in-fact where "manifested by conduct."

50. To find a contract implied-in-fact, the fact-finder must conclude that the parties intended to contract and promises were exchanged, the general obligations for which must be sufficiently clear.

51. Faraday and Astound had an enforceable contract implied-in-fact for the work completed on each of the Projects.

52. Faraday requested and was provided with written proposals for the Projects, which Faraday failed to sign and return.

53. However, it is very clear that Faraday approved the proposals and terms therein through verbal and written communications, as well as course of conduct between the parties.

54. Astound provided various services on the Projects, at the express direction and with full approval of Faraday.



6

55. In fact, Faraday was working directly with Astound on moving the Projects forward.

56. The conduct between the two parties undoubtedly constitutes an intention to contract based upon the terms and conditions set forth by Astound.

57. Faraday breached the terms and conditions set forth by Astound in failing to compensate Astound for its services as identified in the Invoices.

58. Astound has incurred damages as a result of Faraday's conduct as specified herein in an amount to be proven at trial.

59. Astound has been required to retain the services of legal counsel and is entitled to recovery of its fees and costs that it has and will continue to incur in this matter.

## FIRST CAUSE OF ACTION

### (Breach of Covenant of Good Faith and Fair Dealing)

60. Astound incorporates Paragraphs 1-59 as though fully set forth herein.

61. Every contract imposes upon the contracting parties the duty of good faith and fair dealing.

62. Astound and Faraday entered into binding contracts in relation to the Projects.

63. Under each of those contracts, Faraday owes a duty to Astound to act in good faith and fair dealing.

64. Faraday has undeniably breached its duty by approving the work done by Astound and continuing to promise execution of contracts and resolution of the Invoices with no intention of actually doing so.

65. Instead, Faraday continues to delay payment in bad faith by repeatedly asking for documents and materials that have been provided multiple times.

66. Astound has incurred damages as a result of Faraday's conduct as specified herein in an amount to be proven at trial.

67. Astound has been required to retain the services of legal counsel and is entitled to

1  recovery of its fees and costs that it has and will continue to incur in this matter.

## THIRD CAUSE OF ACTION

### (Promissory Estoppel/Detrimental Reliance)

68. Astound incorporates Paragraphs 1-67 as though fully set forth herein.

69. Based upon the representations of Faraday, particularly those of O'Neill, Astound began working on the Projects.

70. Astound provided Faraday with a budget proposal for each of the Projects, at Faraday's request.

71. Faraday, through O'Neill, reassured Astound that the proposals were reasonable, would be executed and that payment would be made.

72. Astound reasonably relied upon Faraday's representations and continued to provide services in relation to the Projects in order to ensure that Faraday met its tight deadlines.

73. Astound is now out of a substantial amount of fees and out of pocket costs incurred in relation to the Projects.

74. Astound has incurred damages as a result of Faraday's conduct as specified herein in an amount to be proven at trial.

75. Astound has been required to retain the services of legal counsel and is entitled to recovery of its fees and costs that it has and will continue to incur in this matter.

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment)

76. Astound incorporates Paragraphs 1-75 as though fully set forth herein.

77. It is undisputed that Astound conferred its services on the Projects and Faraday accepted and retained the benefit of those services.

78. Astound provided Faraday with various tangible designs and plans in relation to the Projects.

79. Astound also traveled to attend in person meetings at the request of Faraday and was involved on countless telephone conferences to discuss the Projects.

80. It would be inequitable for Faraday to appreciate the benefit of all of the services provided by Astound without payment for the value thereof.

81. Astound has incurred damages as a result of Faraday's conduct as specified herein in an amount to be proven at trial.

82. Astound has been required to retain the services of legal counsel and is entitled to recovery of its fees and costs that it has and will continue to incur in this matter.

## PRAYER FOR RELIEF

WHEREFORE Astound prays for relief as follows:

1. For an award of damages in an amount to be proven at trial, in excess of $75,000.00;

2. For an award of its attorneys' fees and costs incurred herein; and

3. For such other and further relief as this Court may deem just and proper.

DATED this 25th day of May 2018

DICKINSON WRIGHT PLLC

_____
John L. Krieger
Nevada Bar No. 6023
Email: jkrieger@dickinson-wright.com
Taylor A. Anello
Nevada Bar No. 12881
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210
Tel: (702) 550-4400
Fax: (702) 382-1661
*Attorneys for Plaintiff The Astound Group*



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of May 2018, I served a true and correct copy of the foregoing **COMPLAINT** by electronic service in accordance with Administrative Order 14.2, to all interested parties, through the Court's **CM/ECF ELECTRONIC NOTIFICATION** system addressed to:

_____
An employee of Dickinson Wright PLLC